May it please the Court, Alexander B. Wathen for the appellant, Ryan Buckman. Mr. Buckman would like to, or I'd like to reserve three minutes for rebuttal as well. There, probably the biggest issue in this case is what's the scope of the record and the scope of review in summary judgment? In its motion for summary judgment, docket 99, MCI asked for summary judgment based on the pleadings and papers contained in the file of the case. That would, on its face, make everything that's in the case file part of the record for the motion for summary judgment. And that would mean that the district court should not have disregarded any portions of it. Additionally, even though I didn't specifically state this in Mr. Buckman's brief, the text, the plain meaning of Rule 56 also supports this, requiring that if the pleadings, depositions, answers to interrogatories and admissions on file together with, and I'm going to stop reading there, show no genuine issue of material fact, then the moving party is entitled to judgment as a matter of law. So Rule 56, the plain meaning, requires a district court, before granting summary judgment, to review, among other things, the depositions on file. And the depositions as contained in Mr. Buckman's record excerpts, those are the most significant of all, because that's where the genuine issues of material fact tend to appear. And those are properly before the district court, and they should have been considered. I can't speculate exactly as to what the district court considered. It wasn't clear. It does appear that the district court did not consider significant portions of the depositions in finding that there was no genuine issues of material fact in the grant. Kennedy, where in the materials, depositions elsewhere, did Mr. Buckman say that he was too ill to call in on the 19th and the 20th? The difficulty, in fact, is that it does not specifically state that with respect to those specific days. I cannot find somewhere, but it does describe that when he takes the interferon shots, that he has fatigue. It describes a whole list of symptoms. Well, but he was able to come back the following day, on the 21st. And there's a difference between, you know, being ill, having some of the last vestiges of something. And as I understand it, that what he testified to, or either in his depositions or affidavits or elsewhere, was that his he thought his arrangement with them is that he didn't have to call in if he was too sick to call. And I don't see anything in the record that says that he was too sick to call either of those days. And I agree, Your Honor. It doesn't specifically say that. He was on FML leave, a leave up until the Friday before, Friday the 16th. On the 19th, he called in late, an hour and a half later or so. So he was able to make the call, he just had to make it late. On the 20th, he didn't call at all. Well, that's one of the misunderstandings, Your Honor. Of course, he – even though he may not have called on that particular day, MCI had gone down as being excused under unpaid medical leave, while the district court stated that it was unexcused. And that's one of the other questions that I certainly had that appears that the district court made at least two what I call plain errors, not to be confused with the criminal doctrine in the – its opinion. And I hope that answers your question, Judge Reinhold. It's excused because he got a doctor's note that said – which he brought in on the 21st, which said he couldn't work that day, and then the doctor inserted the 19th as well as the 20th. He saw him on the 20th and said – he went to the doctor on the 20th, he was well enough to do that, and said he should be excused from work. But being excused from work and not calling and telling the people is another – two different things. And I just understand that he went to see the doctor on the 20th, doctor gave him a note that said he's fine to come back on the 21st. But nothing – and he did make a call on the 19th. So I just don't see anything that suggests there was any reason he couldn't call on the 20th, nor anything that says he couldn't call on time on the 19th. One – that's correct. The record's a little scant, but one of those – that note, I believe, appears several times, and I can find the part of my brief that cited it, but it does say handwritten on the note, off due to liver 419 and 420. Right. Well, you know, you can be off because you can't work because of your liver. That doesn't have much to do with your ability to telephone. And I think it's not so much an ability of not telling him. I think it goes back to the issue of whether the district court should have appointed counsel. There may be additional evidence out there that Mr. Buckman didn't properly present. Well, that's a different problem, too. You know, the – someday there may be counsel for people in civil cases where they really can't prosecute them themselves, but there isn't yet. And I don't think you're going to find that the failure to appoint counsel is reversible. It may lead to things where not all the evidence is made available, but that's the system. And under that system, you still judge summary judgment on the same basis. So I think if the district court had to help answer your question, Your Honor, if the district court had considered that doctor's note saying off due to liver, that would at least under the McGandlin case, which seems to have – simply require a statement in order to show a disability. And that terms more of the ADA than the FMLA, but at least under that, that would have created a genuine issue of material fact if the district court had in fact considered it. Mr. Buckman did, of course, submit a sworn declaration, even though the district court said that that was too late to submit a sworn declaration, saying that all the documents he submitted were genuine. And also, the – as far as the authenticity, the notice, I believe, had an MCI Bates number on it, Bates number MCI 1300 on the top or bottom of that note, and that would show it was produced by MCI and Discovery. Therefore, it would have presumably been self-authenticating, and I can't say that that's not necessarily the national rule, but perhaps under a local rule, it would be hard for MCI, in good faith, to deny the authenticity of a note that they obtained through Discovery, presumably from the doctor. And in addition to that form of error in the opinion of the district court, the district court opinion also erroneously stated that Buckman did not explain whether the medication changed his impairments. He testified in the depositions on a number of occasions that the medication made them worse. Most of the deposition testimonies contained in docket numbers 106.3 and 106.4. The main issue that MCI has, that they contended that only the portions they designated or marked should have been considered by the district court, since those are the only ones MCI wanted into evidence. But I think under the statement in docket number 99, MCI's motion, as well as the plain meaning of Rule 56, if a deposition or any portion of it is filed with a court, that entire one should be considered by the court in determining if there are any genuine issues of material fact. The – I think another issue that is, is whether any substantial impairments of any major life activities, the deposition testimony, even though it's unclear how much of this the district court considered, it talks about working, it talks about sleeping, eating and digestion, exercising, walking, speaking, thinking, reproduction. There are a number of major life activities that, if the evidence is looked in the light most favorable to Mr. Buckman, and all inferences are drawn in his favor, or I think as the addicts' case may have said, that the evidence of the nonmovement should be believed, then that's sufficient to raise a genuine issue of material fact, whether there's a substantial impairment of a major life activity. Another issue I think also relates to the duration of the impairment. And this was not really clearly expressed in my brief, and the vomiting in fact had started in June 2003, some of the depositions show. Buckman was still sick after he was fired, took a couple of months after that for the symptoms to go away, and of course he had to stop treatment within a month or so when his medication ran out and his insurance also ran out. I think an interesting point is that since MCI terminated Mr. Buckman, it's not known how long the symptoms would have gone on if he had continued his treatment. So I couldn't find any court decisions on this point, but it would seem to me like the appropriate thing is for the court to determine whether this is a long-term impairment, to look at how long they would have gone on or could have gone on, rather than how long they actually had gone on, because otherwise an employer could simply terminate an employee in order to prevent the ailment or disablement from becoming long-term and, therefore, avoid liability under the ADA. If there are no further questions at this time, I'd like to reserve the remainder  Thank you, counsel. Thank you, Your Honors. Good morning, Your Honors. My name is Liz Watson. I'm representing the appellee and defendant in this case, MCI. I'd like to focus on three key reasons why the district court orders granting summary judgment and denying counsel should be affirmed. I'll summarize them briefly and then go back to each in more detail. The first reason is, and the panel hit on this right away, that MCI terminated plaintiff because he violated MCI's call-in rules. The FMLA regulations specifically permit employers to enforce their call-in rules and to deny FMLA leave if an employee doesn't call in as required. The plaintiff here had notice of the call-in rules, had been warned for violating them, and there was no evidence on the record that he could not have called in as required. The second point is that the plaintiff failed to show he was disabled because he didn't show that any impacts rose to the level of a substantial impairment. And the third point is that the district court here was fair and patient and certainly didn't abuse its discretion in denying counsel for Mr. Buckman. So turning to the first point, that plaintiff was terminated for violating MCI's call-in rules and not because of a disability or because he took FMLA leave. That alone is sufficient grounds to affirm the summary judgment motion as to both causes of action. The undisputed record here showed that Mr. Buckman had received 11 written warnings in his short 14 months of employment. He was on a final warning at the time of his termination. He signed numerous documents acknowledging that he was aware of the call-in rules. And he had received a written warning just a few months before his termination for violating those very call-in rules when he called in 15 minutes late. The- He had absences on April 19th and 20th, and on the 20th he said that MCI's records were showing that he was on medical leave for that day. Mr. Buckman was terminated because he violated the call-in rules on both the 19th and the 20th, and because his absence on the 19th was not excused. I understand the problem about the 19th, but as I understood what counsel was saying, he said that on the 20th, that MCI's own records showed that he was on medical leave, which means then that he shouldn't have been fired for not calling them since they knew he was going to be on medical leave. He was not terminated because he was absent on the 20th. He was terminated because he failed to call in on the 20th. I guess I took, I guess, and maybe you can correct me on this one, I guess I took counsel's argument to mean that MCI was aware that he was going to be absent on that day. No, and he, MCI was not aware, he did not call in at all on the 20th. And the FMLA regulations specifically state that when an employee violates the call-in rules, an employer can deny or delay FMLA leave. Well, it does sound a little bit like somebody, I'm sorry, I didn't know what somebody else was doing. The, I don't know when the records, the entry was made to show that he was on leave on the 20th. I assume that it was because they got a doctor's note on the 21st. But it certainly is unclear if they knew that he was going to be on leave on the 20th, before the 20th, and that was agreed to, then he wouldn't have had to call in. The reason that the 19th was considered an unexcused absence and the 20th was considered an excused absence, this is really outside the record, because there is a factual dispute about the 19th. He originally told his supervisor that he was in jail on the 19th, and that's why he couldn't report. I read that somewhere, I thought that was in the record, but that's a factual dispute. He says he didn't tell the supervisor. The supervisor says he did. So we can't resolve that dispute. But the, I don't know that that explains why the record showed that he was on medical leave or, you know, on the 20th, that it was an excused absence. Well, when the plaintiff returned to work, he said, I was out because I was sick. They didn't believe him on the 19th. They did believe him or they didn't hold it against him on the 20th. So that was not considered one of the reasons for his termination, but that doesn't excuse his failure to call in to report that he would be absent on the 20th. Well, if it had, it depends on when the medical excused absence was granted. If the excused absence was granted on the 19th, then he wouldn't have had to call in on the 20th. If it was granted on the 21st, it's a little odd to then put that in the record on the 20th, but maybe it's not. I don't know. Well, under MCI's the fire wasn't made until the 23rd. Is that right? Correct. They put him on administrative leave while they considered and did an investigation and then they terminated him. And when was he put on administrative leave? When he returned to work on the 21st. So, but MCI's call-in rules were that you need to call in, unless your absence is preapproved, you need to call in every day before the start of your shift so that MCI knows whether you're going to report to work and can make plans to cover the work. It's undisputed that he didn't do that on the 20th and that he did it late on the 19th. And that, per the DOL's FMLA regulations, is grounds to deny protected leave, even if the absence would otherwise be for an FMLA-qualifying reason, and to terminate him. If anything here, the record showed an absence of discriminatory animus. MCI had granted every one of his requests for medical accommodations up until his termination. They granted his request to change his work schedule when he requested that for medical reasons. They twice granted his request to change his team assignment when he made that request for medical reasons. And they granted his request for medical leave before he had even qualified for protected FMLA leave. So on that record, bars any inference that MCI's reason for terminating him was anything other than violating the call-in rules. The plaintiff makes two arguments to try to exempt himself from the call-in rules, both of which should be rejected. First, he claims he had some special leniency deal with MCI. If you go back to the plaintiff's opening brief and to his deposition testimony, what he really testified was that he was told by MCI that if he was not able to call in because he was too sick, he would be given leniency. So even taking that testimony as true, there's no evidence on the record here that he was not able to call in as required. And so that special deal would not save him here. He's also made a novel argument that if an employee is on an FMLA leave on Tuesday and doesn't show up on Wednesday, that the employer is supposed to assume that the employee is still sick and that the employee is excused from the call-in rules. That argument flatly contradicts the FMLA regulations, and the cite on that is 29 CFR section 825.303C. It's also contrary to common sense. Employers have to know when their employees are going to report to work so that they can plan to get the work covered. And other courts have rejected this argument, refer to the Seventh Circuit decision in the Mellon case. Well, it's undisputed that he was on leave the week before? Correct. That was a pre-approved FMLA. Does the record show when the pre-approved leave expired? It expired that Friday. MCI expected him to return to work Monday the 19th. And there's no dispute about that in the record? That's correct. I'd like to turn to the ADA claim. That claim fails for the additional and separate reason that plaintiff hasn't shown that any limitation was substantial. There are two reasons for that. Well, if you prevail on the first claim that he violated the call-in rule, you don't have to reach anything else, right? That is correct. As to the issue of whether or not he's disabled, which is an element of his prima The first reason that it's not substantial is that the effects were too short in duration. The Supreme Court said in the Toyota case that the impact must be, quote, permanent or long-term. The EEOC regulations specifically say that temporary impairments are not covered. And this court held in the Sanders case that an impact of just under four months is not substantial. Here, the plaintiff testified at his deposition that most of the impacts were caused not by the hepatitis C, but by the treatment. And that treatment began January 30th of 2004. He alleges that the impacts lasted during the three months he was on treatment for one or two months after the treatment ended. Even assuming that impact, even assuming that that only lasts for four or five months, which falls short of being permanent or long-term, but he testified that the impacts were not lasted two to four days a week, bringing the total actual impairment down to two to three months, which is certainly not substantial. The only impact that he alleges that preceded his treatment that he attributes to his hepatitis C is eating. He alleges that he experienced vomiting and diarrhea. However, he admitted he could eat. He admitted he was able to remain a top performer at MCI during that period and that he was able to do full workouts. So certainly any impairment with respect to eating was not substantial. The second reason that his evidence falls short of establishing a substantial impairment is that it's all too vague and conclusory under the standard articulated by this court in Head and most recently in the Besserill case. In the Head case, the court held that a declaration by the plaintiff can be sufficient to establish a substantial impairment, but that it has to be a detailed declaration. In Head, the plaintiff was bipolar and had depression, submitted a detailed declaration about how that impacted his ability to sleep and interact with others. However, the court said that a conclusory declaration is not going to be sufficient. Just out of curiosity, was that the one with the bipolar and depressed? Yes. Was he a pro-pure? I don't know. I don't know. I'm happy to look that up. No, no, that's all right. I said just out of curiosity. Well, and in the Besserill case, which is a recent case, the court held that the plaintiff's declaration was not sufficient to establish a substantial limitation on seeing and sleeping. And that's exactly what we have here. We have very conclusory evidence that does not contain detail about how frequently the impacts occurred, the duration, the severity. For example, with respect to eating, we don't know how frequently he vomited or how long each incident lasted. How long each vomiting episode lasted? Correct. Was it five minutes? Was it two hours when it occurred? Did it occur once a week, once a month? There's no evidence on the record. We don't know whether it was only when he ate certain foods. In the Besserill case, the court held that an inability to eat hard foods was not a substantial limitation. There just isn't enough evidence on the record here to meet his burden of establishing a substantial limitation. And finally, the standard of review of the district court's order denying him counsel is abuse of discretion. There certainly was no abuse of discretion here, and I don't think that argument's even been made. There's nothing exceptional about this case. It's a run-of-the-mill employment case. And the challenges that he faced are really no different than the challenges that any pro se party would face opposing summary judgment. And the court mitigated any difficulty by giving him a warning notice, and that warning notice tracks verbatim the model notice approved by this Court in the Rand case. Thank you, counsel. Thank you. Thank you. Your Honors, addressing these in roughly the order that they were raised, with respect to the call-in rules, there's testimony in the depositions regarding some of that. Obviously, it's better to have it in writing than not having it in writing, but I don't think Congress intended in the FMLA that everything had to be in writing, and that's something that should be considered on a case-by-case basis, just like the ordinary 30-day rule that's been used. So what is it that's in the deposition about the call-in rules that you think prevents summary judgment? Well, it does say in the deposition that Mr. Buckman was told and believed by his supervisors that he could call in, and they were the supervisors understood that sometimes he couldn't call in and that they would understand that. That's why I asked you whether there was any evidence that he couldn't call in. There wasn't. Well, when you say I'm home with a cold, that doesn't mean you can't make a telephone call. Under an ordinary cold, Your Honor, I think that that obviously would not have been a situation where it should have been excused, but the nature of his illness. What was there about the nature of this illness that meant he couldn't call in? The first day he did call in an hour and a half late. The second day he went to see the doctor. That doesn't sound like somebody who can't make a telephone call. And that's perhaps one of the weakest points of that case. I wish I had a better record to go on. The notice he has from the doctor is a standard notice the doctor issues to kids who come in with their parents so they can get back into school, and it's issued for people who have to be excused from work and have to come back with a doctor's note. But it really doesn't say anything about his capacity to make a phone call. And obviously doctors wish doctors would think that their notes could be in litigation at some point. But that's one of the difficulties. But at least the doctor's note, if it had been considered, would have created a genuine issue of material fact. Most of those notes are issued to kids who have to get back into school, and the kids don't have a call first before your absent rule. That's very correct, Your Honor. And I think the doctor may have issued it thinking that. And that's also another good reason that you gave, Your Honor, why the inferences should be made in favor of Mr. Buckman, that maybe that the note should be considered to create a genuine issue of material fact for the 19th as well. The other concern, of course, was whether it was substantial. I think I've already addressed that. And I'd like to refer again to the deposition testimony. One of the things that's said is that he was wobbly walking, pretty severe. Pages 19 through 29 of Mr. Buckman's brief provides a very good summary of the deposition testimony. I'm running short of time, so I'll go on to the most important issues. The presumption regarding whether someone is absent one day and then can be absent the next day. On page 38 of Mr. Buckman's brief, it cites the Brunel v. Ciro case from the District of Maine, which does seem to support there's at least one court that has believed in a similar presumption. Again, this all should be decided on a case-by-case basis rather than a blanket rule. And sometimes some illnesses such as someone receiving treatment for hepatitis C, it might be too much to require a strict compliance with a call-in, but maybe for other illnesses it wouldn't. And again, the medical evidence I think would tend to support or at least allow a fact finder to make a reasonable inference. I also wanted to address the issue about I think MCI takes a position that they don't know how treatment would affect it. Even under the old pre-ADAAA rules, which may be the ones that apply to this case, the – if treatment makes – I don't think Congress intended that if the treatment makes the symptoms worse, that that shouldn't be considered whether someone is disabled. Clearly, the expected and only known treatment that would work, the – may I wrap it up? The only known treatment that would work, the side effects of that should at least be considered in determining whether it is – whether this is a substantially disabling thing. And again, I think those deposition things speak for themselves, or at least a court could have found that they're substantially limiting. Also, if – with respect to the Bissell Real case, I think that can be distinguished other than the one part that it is precedent of this Court. And I think I would like to reserve that issue for an en banc motion if necessary, unless the Court would like to hear from me more on what my response would be to the Rule 28J letter on that. Thank you, counsel. Thank you, Your Honors. Thank you. All right. Thank you very much, both of you. The case just argued will be submitted. And the Court will stand in recess for the day.
judges: Hug, Reinhardt, Bybee